IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DONNA KIRKLAND,

    PLAINTIFF,

v.                                                              CASE NO.: CV-03-J-3147-NE

MILTEC CORPORATION, INC.,
et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court are the defendants' motions for summary judgment (docs. 18 and 20), evidence in support of said motion (docs. 22, 23 and 24) and memoranda in support of their motions (docs. 19 and 21), to which the plaintiff filed an opposition (doc. 25) and exhibits in support of her opposition (doc. 26). The defendants thereafter each filed a reply (docs. 28 and 29). The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

### I. Factual Background

Plaintiff sued her past employer for sexual harassment and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*, violation of the Fair Labor Standards Act; violation of the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. § 12101, *et seq.*, violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*, and state law claims of Invasion of Privacy, Outrage and Negligent Retention/Supervision. She sues her past supervisor, Christina McAlpin, for Invasion of Privacy and Outrage.

In her response to the defendants' motions, the plaintiff concedes that her claims under the ADA, FMLA and ADEA are due to be dismissed. The court shall dismiss said claims by separate order.

Plaintiff began working for defendant Miltec through a temporary agency in the security position of visitor control. Plaintiff depo. at 40, 43, 50-52; McAlpin depo. at 29, 33, 37, 158. Because defendant is a government contractor, there are procedures which defendant must go through in order to meet with other contractors. *See* plaintiff depo. at 55-60, 74-76. In January, 2002, after 90 days of employment, the plaintiff was hired by defendant as a permanent employee. *Id.* at 79-80.

The plaintiff alleges that throughout her employment, she was promised the position of assistance facility security officer (AFSO) and/or a promotion to that position. Plaintiff depo. at 45-48, 81, 83, 131-133, 136-139, 255; McAlpin depo. at 104, 122-123, 162. However, she was hired as a "security representative" and knew this. Plaintiff depo. at 105; McAlpin depo. at 32. *See also* plaintiff exhibit C.

The plaintiff alleges that she was not paid for overtime she worked, although

she was an hourly employee. She also asserts that, after Miltec became a subcontractor to Teldyne in April, 2002, she was encouraged by her boss, Tina McAlpin, to have an affair with the Facility Security Officer (FSO) at Teldyne, Randy Bice.[1] Plaintiff depo. at 147-148. McAlpin disputes telling plaintiff to have an affair with Bice. McAlpin depo. at 68.

McAlpin told the plaintiff to hand deliver visit requests to Bice so plaintiff could meet him. Plaintiff depo. at 120-121. McAlpin states plaintiff asked if she could hand deliver the requests because there were almost 100 requests and McAlpin told her that was a good idea so she could put a face with Bice's name. McAlpin depo. at 67-68. The plaintiff received a merit raise in October, 2002. Plaintiff depo. at 183; McAlpin depo. at 135, 165; defendant exhibit H.

On November 4, 2002, Bice's company authorized a bypass letter to defendant Miltec, so Miltec employees could attend meetings with defense contractors on the subcontract with Teledyne without having to obtain visit letters first. Plaintiff depo. at 193-194; McAlpin depo. at 70, 73-74. On November 7, 2002, after their affair ended, plaintiff told Bice not to contact her again, and he did not. Plaintiff depo. at 198-200, 359.

---

[1] McAlpin was the Facility Security Officer during the relevant time in question. McAlpin depo. at 14.

The plaintiff states once she ended the affair with Bice, McAlpin retaliated against her. McAlpin states that, on November 7, 2002, the plaintiff told her Bice was harassing her, and McAlpin stated "whatever." McAlpin depo. at 169. McAlpin took over all matters which would involve Bice. *Id*. at 92. Plaintiff states she reported to McAlpin that Bice was showing up in the defendant's parking lot, and McAlpin stated he was just in love with plaintiff, and not to worry about it. Plaintiff's depo. at 200-207.

The plaintiff received a counseling letter on January 10, 2003. She then became ill and received short-term disability benefits, then FMLA leave. Plaintiff depo. at 263-264, 283-284; Defendant exhibit O. After plaintiff was on leave for approximately six months, plaintiff's then counsel wrote a letter to defendant concerning plaintiff's separation from employment. Plaintiff depo. at 336; plaintiff exhibit E. This letter discussed defendant's unlawful termination of plaintiff and demanded $250,000.00 to "avoid costly litigation." Plaintiff exhibit E. Defendant states it thought plaintiff was employed until it received the June 2003 letter. *See*

Plaintiff depo. at 338-341; Defendant exhibits G and K, plaintiff exhibits F-G.[2] Plaintiff has not worked anywhere since she left defendant. Plaintiff depo. at 40.

According to plaintiff, the first job description she received was the letter of January 10, 2003, which outlined what her duties would be from then on. Plaintiff depo. at 106-108. McAlpin states the January, 2003 letter was needed because the plaintiff's job performance had deteriorated. McAlpin depo. at 120-127. The duties contained in the letter were basically a description of the AFSO position and not plaintiff's current position.[3] *Id.* at 127-128. McAlpin alleges plaintiff had been verbally reprimanded before January 10, 2003. *Id.* at 134; McClure depo. at 31.

Plaintiff and defendant dispute whether the plaintiff was lead to believe she was fired on January 10, 2003, whether she resigned, or whether she remained an employee. Tracee Baddley states he was lead to believe that the plaintiff had been terminated.[4] Baddley depo. at 36. Her badge was deactivated on January 10, 2003,

---

[2]Note that the defendant's letter to plaintiff's counsel, dated June 30, 2003, references a May 21, 2003 letter from plaintiff's counsel. No party to this litigation has submitted such a letter. However, the court does have a letter from plaintiff's counsel to defendant Miltec dated June 12, 2003. Plaintiff's exhibit E. Defendant's reply to plaintiff of June 30, 2003, seems to be in response to the June 12, 2003 letter.

[3]On a bizarre side note, Randy Bice's son, Randy Bice, II, is now employed by defendant Miltec. McAlpin depo. at 130, 171. McAlpin states he's the AFSO, McClure states he's the security representative. McAlpin depo. at 171, McClure depo. at 60.

[4]Tracey Baddley was a fellow Miltec employee who was subsequently fired. Baddley depo. at 8-9, 36-37. He was only employed there from October, 2002 through February, 2003.

5

and never reactivated. Plaintiff depo. at 166-167, 177-178, 303; Baddley depo. at 9-10, 33-34, McClure depo. at 46. She called Julie McClure, and was told to get her things out of her office.[5] Plaintiff depo. at 176. The plaintiff told McClure she had not resigned. *Id.* at 176-177, 284-289, 296-298. *But see* McAlpin depo. at 142; defendant exhibit Q. McClure states plaintiff called her and said she was going to resign. McClure depo. at 39-40. McClure says she told the plaintiff not to act in haste. *Id.* at 40. According to McClure, the plaintiff then called her at home, and McClure returned the call and told plaintiff that if she wanted to clean out her desk, Gina Miller would need to escort her. *Id.* at 43-45. McClure also states that plaintiff called back and said she was not resigning. *Id.* at 46. McAlpin states the policy is to deactivate a badge on someone who will be absent for more than 30 days, so on the belief plaintiff resigned, her badge was deactivated. McAlpin depo. at 143.

Upon notifying the defendant that she was sick and could not work, the plaintiff asked for and received FMLA leave and short and long term disability benefits. Plaintiff depo. at 287, 289, 292-295, 299, 321, 329. While plaintiff was out on leave, her position was advertised as a full-time, permanent position. Plaintiff depo. at 315-318; *but see* McAlpin depo. at 146-147; McClure depo. at 51-54.

---

[5]Julie McClure is the Human Resources Director for defendant Miltec. McClure depo. at 12.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than

7

simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

*A. Sexual Harassment*

To demonstrate sexual harassment, a plaintiff must show: (1) that "she belongs to a protected group;" (2) that she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;" (3) that the harassment was "based on [her] sex ...;" (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "a basis for holding the employer liable." *Johnson v. Booker T. Washington Broadcasting*

*Service, Inc.* 234 F.3d 501, 508 (11th Cir.2000); *citing Mendoza v. Borden*, 195 F.3d 1238, 1245 (11th Cir.1999). Even assuming that the plaintiff could demonstrate the first four elements for a sexual harassment claim, the court can find no basis to hold defendant Miltec for the alleged harassment by Bice.

Plaintiff alleges McAlpin encouraged her to have a sexual relationship with Bice. She alleges that McAlpin said things to her like "work your magic," which was meant in a sexual way. Plaintiff depo. at 147-148. McAlpin told her to "Go over there and work your southern charm. You've got the best legs at Miltec. Every time you go over there, wear a short skirt, wear your high heels. Just go over there and work your magic." *Id.* at 149. Plaintiff never reported this to McAlpin's supervisor, Julie McClure. *Id.* at 151, 175. McAlpin has no memory of commenting on plaintiff's legs. McAlpin depo. at 68-69. She does recall telling plaintiff to "work her magic" in regard to a pentagon visit, which had nothing to do with Bice. *Id.* at 74-76. However, according to Baddley, the person McAlpin said this was in reference too would not have been someone who handled visitor requests. Baddley depo. at 30.

Plaintiff and Bice began a relationship in August, 2002. Plaintiff depo. at 153, 164. Plaintiff ended it in October, 2002. *Id.* at 168, 208. The plaintiff alleges she had the affair to further her position in Miltec, because McAlpin pushed her into the affair. *Id.* at 173. McAlpin states she learned of the affair in October, 2002, and was not pleased about it, but saw no reason to report it. McAlpin depo. at 70, 80-83. She

never encouraged plaintiff to leave her husband for Bice. *Id.* at 84-85. McAlpin also stated that plaintiff leaving Bice caused more work for her and that there was absolutely no benefit to her from plaintiff having an affair with Bice. *Id.* at 87, 169-170. Furthermore, she stated it harmed her professional relationship with Bice. *Id.* at 170. Mike Alverez, president of Miltec Systems Company (a division of defendant), echoes this sentiment. Alverez depo. at 26. However, Baddley testified he was told that plaintiff had an "in" getting visit requests done quickly because of her relationship with Bice. Baddley depo. at 22. He heard this from McAlpin, plaintiff, Sam Burrow and Gina Miller. *Id.* at 24. He also stated that plaintiff told him she felt trapped in the relationship and was being encouraged to stay in it by her supervisor. *Id.* at 28.

Plaintiff complains she was sexually harassed by **Bice**, and reported this to McAlpin after her and Bice's affair ended. Plaintiff depo. at 344-345. McAlpin just told her that Bice needed time to get over her and not to worry about him. *Id.* at 346. While plaintiff complains that McAlpin failed to stop Bice from harassing plaintiff, the plaintiff has alleged no basis to hold defendant Miltec liable for Bice's actions. Bice was not an employee of Miltec.[6]

---

[6] Oddly, defendant does not focus on the fact that Bice was not defendant's employee. Rather, defendant relies on *Succar v. Dade County*, 229 F.3d 1343, 1345 (11th Cir.2000), for the proposition that this was not harassment based on gender.

Additionally, defendant Miltec does have an anti-harassment policy in place. McAlpin depo. at 61-63; McClure depo. at 20. Defendant argues that, pursuant to the policy, plaintiff was supposed to contact the Human Resources Manager, Julie McClure. However, even if the plaintiff had pursued the proper steps for defendant Miltec's anti-harrasment policy, Miltec still had no employer's authority to control the actions of Bice.[7]

### B. Title VII Retaliation

As to the plaintiff's retaliation claim, the plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed.' *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 586 (11th Cir.2000), citing *Meeks v. Computer Assocs. Int'l.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)). To establish a prima facie case of retaliation for engaging in protected activity, the court must use the familiar *McDonnell-Douglas* burden shifting standard. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

---

[7]Although plaintiff relies on cases involving supervisors, Bice was not plaintiff's supervisor at any time. Plaintiff argues that, because she stopped having sex with Bice, McAlpin gave her a negative evaluation. Even if there was some legal connection between these, a negative evaluation has been held to be insufficient to constitute an "adverse employment action." *See e.g., Succar v. Dade County School Board,* 229 F.3d 1343 (11th Cir.2000). Regardless of whether plaintiff reported it to the proper person and regardless of whether Miltec had an anti-harassment policy in place, Bice was never employed by Miltec.

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Stavropoulos v. Firestone,* 361 F.3d 610, 616 (11th Cir.2004); *Bass v. Board of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir.2001). *See also Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999); *Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir.1997).

To be considered an adverse employment action for purposes of Title VII's anti-retaliation provision, the action must either be an ultimate employment decision or else must "meet some threshold level of substantiality." *Stavropoulos v. Firestone,* 361 F.3d at 616-617. Ultimate employment decisions include decisions such as termination, failure to hire, or demotion. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998).

Plaintiff's complaint to McAlpin that Bice was stalking her satisfies the requirement of engaging in protected activity. Protected activity under Title VII includes complaining to superiors about sexual harassment. *Johnson,* 234 F.3d at 507, citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [plaintiff], who

informally voice complaints to their superiors or who use their employers' internal grievance procedures."). However, the only arguably adverse employment action suffered by plaintiff was the letter of January 10, 2003.

This letter cannot constitute an ultimate employment action, because she did not lose her job or suffer a lessening of pay, position, or benefits. In *Gupta, supra*, the Eleventh Circuit characterized the threshold as requiring the employment action to be "'objectively serious and tangible enough' to alter [the employee's] 'compensation, terms, conditions, or privileges of employment ...,'" *Id.*, 212 F.3d at 588 (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3rd Cir.1997)). *See also Lucas v. W.W. Grainger, Inc,.* 257 F.3d 1249, 1261 (11th Cir.2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation"). One negative evaluation without financial consequences is insufficient. *See Davis v. Town of Lake Park,* 245 F.3d 1232, 1241 (11th Cir.2001) ("[C]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline."). Additionally, the "loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely--without more--establish

the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause." *Davis,* 245 F.3d at 1242.

Having considered the evidence and relevant law, the court is of the opinion this claim is due to be dismissed.

### C. FLSA

The plaintiff asserts that defendant Miltec violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, because the plaintiff was not paid an overtime rate of time and a half for time worked in excess of forty (40) hours in one week. The FLSA requires employers subject to the Act to pay time-and-a-half overtime compensation to employees who work more than forty hours a week. 29 U.S.C. § 207; *Yourman v. Guiliani,* 229 F.3d 124, 127 (2nd Cir. 2000). The defendant asserts it did not have to pay plaintiff overtime because she took long lunches and smoke breaks and received "comp time" when she worked more than eight hours a day.

Plaintiff states she took one hour lunches. Plaintiff depo. at 165-166. However, when she was gone more than one hour for lunch, she would work later to make it up. *Id.* at 166. McAlpin testified that the plaintiff would often make her classified post office run during her lunch break, McAlpin depo. at 56, which means the plaintiff was actually working during lunch. This is echoed by plaintiff's statement that there were many days she did not have lunch. Plaintiff depo. at 100.

14

Defendant states the plaintiff received comp time for at least some of the overtime she worked. *See e.g.*, McAlpin depo. at 52. The plaintiff testifies that she did not accurately record her time because she was told not to by McAlpin. Plaintiff depo. at 84. McAlpin actually stated to the plaintiff that "in the long-run, thirty minutes here, an hour here ... in the long-run – it would not matter. But in the long-run, I would be overcompensated for it." Plaintiff depo. at 85. McAlpin states overtime came out of profit and she had to approve it first. McAlpin depo. at 47-48. The plaintiff alleges she had to appear to have 40 hours per week, regardless of how many she really worked. Plaintiff depo. at 85-88. She testified that "[o]n most days, I did record it accurately, but at the end of the week, I had to make it look like I had forty hours no matter what." *Id.* at 85. Baddley echoes this, stating that they worked 50 hour weeks and that he was instructed by Gina Miller to write down 40. Baddley depo. at 60. He stated otherwise, Miller would not approve the time card. *Id.* at 60-62. However, Baddley was a salaried employee. Baddley depo. at 60.

Additionally, the plaintiff never asked Gina Miller about getting paid for overtime worked. Plaintiff depo. at 95. McAlpin told plaintiff that, because plaintiff was an hourly employee, she could only work 40 hours a week because anything else required overtime or comp time, and she recommended comp time. McAlpin depo. at 48. Plaintiff stated that she would work "thirty minutes here, thirty minutes there. It was such short periods of time, but short periods of time add up." Plaintiff depo.

15

at 90. Plaintiff estimates she worked one to two hours a week overtime each week. *Id.* at 93-95, 96.

Baddley testified that the plaintiff was always at work early and stayed late. Baddley depo. at 10, 64. However, he also states that at times the plaintiff left fifteen to thirty minutes early to go to the post office. Baddley depo. at 64. When plaintiff was needed to work significant amounts of overtime, she was approved for it.[8] Plaintiff depo. at 349-350. Plaintiff also states she has no records of the times she actually worked. *Id.*

Defendant argues that any overtime owed to plaintiff is at most, *de minimus*, and therefore not compensable. *See Lindow v. U.S.*, 738 F.2d 1057, 1063 (9th Cir.1984). The plaintiff testified she averaged one to two hours per week more than 40, but that she did receive comp time for them. In addition to the overtime reflected on her time sheets, those same time sheets reflect that the plaintiff would work, for example, one 12 hour day then a 4 hour day. *See* defendant exhibit LL. The court agrees that any overtime compensation owed to plaintiff would be, at best, *de minimus. See e.g., Mitchell v. Mitchell Truck Line, Inc.* 286 F.2d 721, 727 at n. 6 (5th Cir. 1961). Furthermore, in response to the defendant's assertions that the plaintiff received comp time for overtime worked, the plaintiff has offered only her own

---

[8]Some of the plaintiff's time sheets reflect her recording of more than forty hours a week. See defendant exhibit LL, time sheets for 05/03/2002; 8/23/2002; 9/30/2002 and 10/04/02.

testimony that she did indeed work overtime. Additionally, the plaintiff has produced no evidence of the amount of overtime compensation she claims. "[T]hese sort[s] of conclusory allegation[s], unsupported by facts, will not suffice to overcome a well-supported Motion for Summary Judgment." *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1531 (S.D.Fla.1995). A plaintiff cannot defeat a defendant's properly supported motion for summary judgment without an affirmative presentation of specific facts showing a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because the court is of the opinion that the plaintiff has failed to create a genuine issue of material fact, the court shall grant the defendant's motion for summary judgment on this issue.

### D. State Law Claims

**A. Invasion of Privacy**:

This claim is against both defendants. Plaintiff offers no explanation in her response as to what facts might constitute a claim for invasion of privacy. As the court can discern no facts which could constitute an invasion of privacy, this claim shall be dismissed by separate order.

**B. Outrage:**

This claim is against both defendants. The plaintiff argues that facts sufficient to support a claim for sexual harassment under Title VII are also sufficient to state the state law claim of outrage, citing *Stabler v. City of Mobile*, 844 So.2d 555 (Ala.2002). Plaintiff alleges that constructive termination for failing to engage in an adulterous relationship is within the state law claim of outrage. While this is arguably so, the plaintiff has produced no evidence she was terminated, constructively or otherwise, for ending her relationship with Bice. Rather, after terminating her relationship in October, 2002, the plaintiff remained employed through June, 2003, when her own counsel informed defendant Miltec that the plaintiff considered herself no longer employed. These facts do not meet the *American Road Service v. Inmon*, 394 So.2d 361, 365 (Ala.1981), definition of outrage.

The plaintiff also alleges that defendant Miltec is liable for the outrageous conduct of McAlpin. Because the plaintiff has failed to demonstrate outrageous conduct on the part of McAlpin, the court does not address defendant's liability for McAlpin's conduct. The facts establish that, for whatever reason, plaintiff had a consensual relationship with Bice, a professional acquaintance of McAlpin's. The plaintiff sent Bice love letters and love poems, met him for lunch, and had a cell phone solely to speak with him. *See* attachments A and B to defendant exhibit E.

N/A
N/A

After the plaintiff ended the relationship, it strained McAlpin's relationship with Bice, and put more work on McAlpin. McAlpin being upset about this is not within the definition of outrage. The sole evidence the plaintiff has offered on this issue is that a month after the relationship was over, at a Christmas party, McAlpin made a comment to Baddley that could be interpreted a number of ways. This is not sufficient evidence to preclude summary judgment.

### C. Negligent Retention/Supervision:

This claim is brought against defendant Miltec for McAlpin's actions. Plaintiff offers no explanation in her response to the defendants' motions for summary judgment as to what facts support her theory that defendant Miltec was negligent in its retention or supervision of McAlpin. The plaintiff's entire statement concerning these claims is merely "Similarly Miltec is thus liable under a theory of negligent supervision and retention of Ms. McAlpin." Plaintiff's brief at unnumbered page 17.

Because the plaintiff has failed to establish a genuine issue of material fact on this issue, this claim is due to be dismissed.

### CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motions for summary

19

judgment on all counts of the plaintiff's complaint are hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 29 day of September, 2004.

*[signature]*
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE